■ In the Matter of the Estate of CYRENA CLOTWORTHY, Deceased. ROBIN MATTISON, as Administrator of the Estate of RANDY C. MATTISON, Deceased, Respondent; CYRUS CLOTWORTHY, as Administrator of the Estate of CYRENA CLOTWORTHY, Deceased, Appellant. [742 NYS2d 168] —Mugglin, J. Appeal from an order of the Surrogate's Court of Saratoga County (Seibert, Jr., S.), entered February 28, 2001, which, inter alia, directed that an annuity received by decedent under a structured settlement agreement was an asset of decedent's estate.

On December 26, 1999, at age 20, Cyrena Clotworthy (hereinafter decedent) died in a one-car accident. The record does not resolve who was operating the vehicle, but it is undisputed that it was owned by decedent. One of the other two occupants, Randy C. Mattison, also died in the accident, survived by petitioner, his wife, and their three children. Respondent is decedent's father and, as her sole heir, was appointed administrator of her estate.

As a result of her mother's death in a motor vehicle accident in 1995, decedent (who was then 16 years old) and respondent executed a release and settlement agreement pursuant to which decedent was to receive a structured settlement from an annuity purchased and owned by Hartford Casualty Insurance Company (hereinafter Hartford). By this agreement, decedent was to receive $59,386.21 on August 16, 2000, $76,217.60 on August 16, 2004, and $103,453.24 on August 16, 2009. In the event of decedent's death, the agreement provided that such "payments * * * shall continue to THE HEIRS OF CYRENA CLOTWORTHY."

By letter dated June 20, 2000, Hartford informed counsel for

decedent's estate that the present value of the annuity was $157,010 and that "[t]he payments are now due to the beneficiary, The Estate of Cyrena Clotworthy, and will be paid out as they become due."[1] On June 29, 2000, respondent, in connection with his role as administrator, filed a document listing the assets of decedent's estate as being in the amount of $157,010.[2]

Upon learning that decedent's estate might have more than nominal value, petitioner, who had been seeking the full $50,000 in coverage from decedent's automobile insurance carrier, commenced a wrongful death action and filed an application for a reservation of assets. On September 1, 2000, Surrogate's Court issued a temporary restraining order prohibiting respondent from using any of the funds of the annuity received from Hartford.

By decision and order dated February 28, 2001, Surrogate's Court determined that the word "heirs" in the structured settlement agreement was intended to mean decedent's estate since the agreement did not designate a specific person as beneficiary of the annuity proceeds in the event of her death. Additionally, since the proceeds of the annuity thus became an estate asset subject to the claims of creditors, all payments made or to become due under the annuity would be reserved pursuant to SCPA 1804 and respondent was prohibited and restrained from utilizing such funds in any manner. Respondent now appeals, and we reverse.

The sole issue for resolution is whether Surrogate's Court properly concluded that the proceeds of the annuity were assets of decedent's estate, subject to the claims of creditors. EPTL 13-3.2 (a) provides, in pertinent part:

"If a person is entitled to receive * * * money payable by an insurance company * * * under an annuity * * * or if a contract made by such an insurer relating to the payment of proceeds or avails of such insurance designates a payee or beneficiary to receive such payment upon the death of the person making the designation or another, the rights of persons so entitled or designated and the ownership of money * * * shall not be impaired or defeated by any statute or rule of law governing the transfer of property by will, gift or intestacy." Petitioner asserts that the designation "heirs" does not constitute a person as required by the foregoing statute since the

---

1. While not contained in the record, this letter was referred to in the order of Surrogate's Court. On appeal, respondent submitted a copy of this letter as an appendix to his brief.

2. This document is also not included in the record, but was included as an appendix to respondent's brief.

"heirs" cannot be determined prior to a decedent's death and without reference to some other statute or provision of law. We reject this contention and the court's finding, made without benefit of extrinsic evidence, that by use of the term "heirs," decedent intended to designate her estate as entitled to receive the proceeds of the annuity upon her death. While there is authority to support the conclusion that the use of the term "heirs" in a document prepared by a layperson is ambiguous, requiring the submission of extrinsic evidence to determine the layperson's intent (*see, MacKinnon v Advance Pattern Co.*, 307 NY 892, 893),[3] the structured settlement agreement here was prepared by professionals, and we should not attempt to create an ambiguity where none exists in the document (*see, Uribe v Merchants Bank of N.Y.*, 91 NY2d 336, 341).

Heirs are distributees (*see,* EPTL 2-1.1) and distributees are *persons* entitled to share in the *property* of a decedent (*see,* EPTL 1-2.5). In contrast, the term "estate" means an interest in property or the aggregate of property that a person owns (*see,* EPTL 1-2.6). To concur in Surrogate's Court's determination that decedent meant "estate" by using the designation of "heirs" as the recipient(s) of the funds after her death would add new definition to the EPTL and create uncertainty where none actually exists. Employment of the term "heirs" in such a document does not create an ambiguity. Rather, it creates a legal category of a potential person or a class of persons who can be individually identified at the time of death (*see, Matter of Johnson*, 32 AD2d 239, 242, *affd* 26 NY2d 858; *see also, In re Bartlett's Will*, 76 NYS2d 247, 254, *lv denied* 274 App Div 856). Simply because a decedent's heirs are not known before death, and the complexion of the class may change between the date of the document and the date of death, does nothing to alter their status as persons under the EPTL.

The explicit purpose of EPTL 13-3.2 is to avoid impairing or defeating, by use of the law of wills, gifts or inheritance, the rights of beneficiaries who are named in documents which transfer "nonprobate" assets upon a person's death. It has no application to determine the identity of such beneficiaries. Affirmance of Surrogate's Court's order would actually impair the rights of the designated beneficiary or beneficiaries in this

---

**3.** It is important to note that the term "heirs" itself is not ambiguous. The plaintiff's heirs in *MacKinnon v Advance Pattern Co. (supra)* were his surviving spouse, his minor children and his adult children from a previous marriage. The extrinsic evidence of intent was taken only to resolve whether or not he intended to include his adult children as beneficiaries when he used the term "heirs" in this "homespun document" (*id.* at 893).

structured settlement agreement by making the proceeds an estate asset, subject to the claims of the creditors.

We have considered the other contentions of the parties, and find them to be without merit.

Crew III, J.P., Peters, Spain and Carpinello, JJ., concur. Ordered that the order is reversed, on the law, without costs, and matter remitted to the Surrogate's Court of Saratoga County for further proceedings not inconsistent with this Court's decision.